# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| BARBARA HOPKINS *et al.*,<br>    *Plaintiffs*,<br><br>    v.<br><br>JOHN D. OSBORN *et al.*,<br>    *Defendants*. | No. 3:17-cv-01245 (JAM) |

## ORDER GRANTING MOTION TO DISMISS

This is a lawsuit by a former DEA agent who claims that a federal judge and several law enforcement officers in Arizona wrongly divulged untrue and life-threatening information about her. Defendants have moved to dismiss the complaint. I will grant the motion on two grounds. First, as to the individual defendants, I conclude that there is no personal jurisdiction over them in the District of Connecticut. Second, as to the remaining claims against the DEA and the U.S. Marshals Service, I conclude that the Court has no subject matter jurisdiction because of sovereign immunity.

### BACKGROUND

Plaintiff Barbara Hopkins used to be a DEA agent in Arizona but now lives in Connecticut with her fiancé and her minor son (co-plaintiffs "John Doe 1" and "John Doe 2"). The defendants are a federal judge (U.S. Magistrate Judge Deborah Fine), two federal law enforcement agencies (the Drug Enforcement Administration and the U.S. Marshals Service), and three federal law enforcement officers (John D. Osborn of the U.S. Marshals Service, Kevin Manning of the DEA, and Michael Pope of the DEA). All the individual defendants live and work in Arizona.

The following facts are alleged in the amended complaint. Doc. #30. In January 2014, Hopkins was a DEA agent in Arizona and took part in the arrest of a drug trafficker named Marco Ochoa-Gonzalez. More than two years later, Ochoa-Gonzalez filed a federal civil lawsuit in the District of Arizona stemming from this arrest, and his lawsuit named as one of the defendants a DEA agent named "Barbara Brown."

The Ochoa-Gonzalez lawsuit was referred to the docket of Judge Fine. At Judge Fine's direction, efforts were made through the Clerk's Office and the U.S. Marshals Service in Arizona to serve the summons and complaint on the named defendant "Barbara Brown."

As a Deputy U.S. Marshal, Osborn was tasked with trying to serve process on "Barbara Brown." According to the complaint, he documented his efforts on a USM-285 form. The Court takes judicial notice of the USM-285 form that is used as a matter of course for federal court proceedings. At the top of the USM-285 form, a plaintiff must fill out information for the process server to use regarding the lawsuit and the name and address of the defendant to be served. At the bottom of the form, the process server from the U.S. Marshals Service must document whether service of process has been successful or unsuccessful. If service has been unsuccessful, the form has a box for the process server to mark with an "X" stating: "I hereby certify and return that I am unable to locate the individual, company, corporation, etc. named above *(See remarks below)*." Then the form has an additional space below under a heading "REMARKS" for the process server to explain why he or she has not been able to serve process.

Osborn went to a DEA office in Yuma, Arizona but was unable to locate and serve the named defendant "Barbara Brown." He recorded the following in the "REMARKS" section of the USM-285 form:

> *1st Endeavor: Above address is not longer a valid address for DEA in Yuma, AZ. Located current DEA address and spoke with DEA employees. No knowledge of a Barbara Brown at this location.*
> *2d Endeavor: Spoke with current DEA Supervisor. Supervisor states he has no knowledge of a Barbara Brown ever working for the DEA in Yuma, AZ. Supervisor stated that there was a Barbara J. Hopkins who worked for DEA in Yuma, AZ in the past, but has left the agency on 5/7/2016. Hopkins is believe[d] to currently be located in Hamden, CT. A DEA employee has advised that Hopkins is known to have serious mental issues and may pose an officer safety concern is [sic] approached.*

Doc. #30 at 3 (¶ 6).

Although Osborn's notation does not identify any of the DEA agents with whom he spoke, the complaint alleges that it was Manning and Pope who reported this information to Hopkins. On July 1, 2016, Osborn filed the completed USM-285 form with the court in the District of Arizona in the Ochoa-Gonzalez case.

On August 1, 2016, in light of the failure to serve "Barbara Brown," Judge Fine entered an order to show cause against Ochoa-Gonzalez why the action against "Barbara Brown" should not be dismissed. The order to show cause that was entered by Judge Fine quoted the second paragraph above ("2d Endeavor") from Osborn's service-of-process form, including the information reported to Osborn that there was someone named Barbara Hopkins who had worked for the DEA in Yuma, Arizona, that Hopkins was now located in a particular town in Connecticut, and that Hopkins was "known" to have serious mental health issues and to be a concern for officer safety if approached.

Ochoa-Gonzalez used this information as disclosed on the court docket to file an amended complaint, now naming Hopkins as a defendant instead of "Barbara Brown." The damages action by Ochoa-Gonzalez was eventually dismissed against Hopkins in May 2017, but according to Hopkins, "the damage was forever done," because Ochoa-Gonzalez "now had the

whereabouts of former Special Agent Barbara Hopkins and the reputation of Hopkins was forever tarnished." Doc. #30 at 3 (¶ 8).

According to the complaint, Hopkins' "employment status was considered classified & private and not for public consumption due to the possibility of conducting undercover and covert drug enforcement operations." *Id.* at 7 (¶ 19). The complaint alleges that "[i]t is important that current or former DEA Agent's identities are protected and that it be protected not just for the Agent but for the Agent's family and law enforcement in general here in the United States." *Id.* at 8 (¶ 29). "The disclosure of Ms. Hopkins' identity and location of her whereabouts to Gonzalez, his family and friends as well as any other defendant Hopkins arrested has caused significant damage to each of the Plaintiffs in that it has forever put all 3 of the Plaintiffs' lives at risk." *Id.* (¶ 30). In addition, according to the complaint, "[t]he slanderous and libelous allegations [concerning Hopkins' mental health] made by, perpetuated by and overseen by the Defendants has caused significant damage to the Plaintiff Barbara Hopkins' reputation and has defamed her in irreparable ways." *Id.* (¶ 34).

The complaint alleges six causes of action. Count One alleges a claim against all defendants for violation of Hopkins' First Amendment right to freedom of speech. Count Two alleges a claim against all defendants for violation of Hopkins' Fifth Amendment right to equal protection. Counts Three and Four allege claims against all defendants for violation of the plaintiffs' Fifth Amendment rights to due process privacy. Count Five alleges a state law claim against all defendants of public disclosure of slanderous and libelous statements. Lastly, Count Six similarly alleges all of the foregoing causes of action against the DEA and the U.S. Marshals Service as defendants.

**DISCUSSION**

Defendants raise numerous grounds for dismissal. I need only address two of them: (1) that the Court lacks personal jurisdiction over the individual defendants, and (2) that sovereign immunity and the Federal Tort Claims Act bar plaintiffs' claims against the DEA and U.S. Marshals Service.

*Personal jurisdiction as to individual defendants*

The individual defendants argue that there is no personal jurisdiction over them in the District of Connecticut. They rely on the fact that they reside and work in Arizona and that all of their alleged wrongful acts took place in Arizona.

Rule 12(b)(2) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss a complaint on the ground of lack of personal jurisdiction. When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden to make a *prima facie* showing that jurisdiction exists, including averments of facts that—if credited—would suffice to establish jurisdiction over the defendant. *See Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 81 (2d Cir. 2018); *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018).

A court should ordinarily address the issue of personal jurisdiction before undertaking an evaluation of the merits of a complaint. *See Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.* 549 U.S. 422, 430-31 (2007); *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 498 n.6 (2d Cir. 2013).

Whether a particular federal court has personal jurisdiction over a non-resident defendant turns on two inquiries: (1) whether the defendant is amenable to suit under the forum state's "long arm" jurisdiction statute, and (2) whether the exercise of jurisdiction over the defendant would otherwise comport with the Constitution's Due Process Clause. *See U.S. Bank Nat'l Ass'n*

*v. Bank of Am. N.A.*, ––– F.3d –––, 2019 WL 637969, at *3 (2d Cir. 2019); *Friedman v. Bloomberg L.P.*, 884 F.3d 83, 90 (2d Cir. 2017).

I will consider Connecticut's long arm statute first. Connecticut law provides for personal jurisdiction over non-resident defendants under five specified circumstances, including (1) if they transact business within Connecticut; (2) if they commit a tortious act within Connecticut; (3) if they commit a tortious act outside Connecticut that causes injury to a person or property within Connecticut; (4) if they own, use, or possess real property in Connecticut; or (5) if they use a computer located in Connecticut. *See* Conn. Gen. Stat. § 52-59b(a)(1)-(5).

It is clear that only the third of these circumstances (commission of a tortious act outside Connecticut that causes injury to a person in Connecticut) might potentially apply here. But the long arm statute further conditions this particular circumstance to require that the defendant "(A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." *Ibid.* Because there is no suggestion by plaintiffs that any of the individual defendants meet these additional requirements, I conclude that the Connecticut long arm statute does not allow for the exercise of personal jurisdiction over any of the defendants in the District of Connecticut. *See, e.g.*, *Ryan v. Cerullo*, 282 Conn. 109, 123-26 (2007).

The same holds true for whether the Due Process Clause allows for personal jurisdiction over the individual defendants. A defendant is not subject to a lawsuit in a particular forum unless the defendant has some connection—that is, "minimum contacts"—to the territory that delimits the forum court's jurisdiction. Thus, "due process requires only that in order to subject a

defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (cleaned up).

In recent years, the Supreme Court has refined the "minimum contacts" inquiry in relevant part to require that there be a basis for either *general* jurisdiction or *specific* jurisdiction over a defendant. What distinguishes general and specific jurisdiction from one another is the nature and degree of a defendant's contacts to the territorial forum. On the one hand, for there to be general jurisdiction, a defendant must be domiciled or essentially at home within the court's territorial district. On the other hand, for there to be specific jurisdiction, the lawsuit must arise from or be related to the defendant's contacts with the court's territorial district. *See generally Bristol-Myers Squibb Co. v. Superior Court*, ––– U.S. –––, 137 S.Ct. 1773, 1779-80 (2017).

None of the Arizona-based defendants call Connecticut their home. And the complaint and filings contain not the slightest hint that plaintiffs' lawsuit against the defendants has arisen in some way from any of the defendants contacts with Connecticut. It looks like defendants have no contacts at all to Connecticut. The most that can be said is they uttered or typed the word "Connecticut" or "CT" while on duty somewhere in Arizona. This falls well short of showing the requisite connection to Connecticut that the Due Process Clause requires. *See, e.g.*, *Walden v. Fiore*, 571 U.S. 277 (2014) (Nevada court lacked personal jurisdiction over DEA officer who allegedly submitted false affidavit in Georgia for seizure of Nevada resident's money at Atlanta airport and despite agent's alleged knowledge that his actions in Georgia could result in delaying return of seized funds to plaintiffs in Nevada); *Thomas v. Ashcroft*, 470 F.3d 491, 495-96 (2d

7

Cir. 2006) (New York federal court lacked personal jurisdiction over California-based DEA agents who arrested plaintiff in California).

In short, there is no basis for personal jurisdiction over any of the individual defendants. Accordingly, I will dismiss plaintiffs' claims against the individual defendants for lack of personal jurisdiction.[1]

### *Sovereign immunity and the Federal Tort Claims Act*

The DEA and the U.S. Marshals Service move to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction based on sovereign immunity. Absent a waiver, sovereign immunity is the default rule for suits against the federal government or its agencies. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 474 (1994). Further, "[b]ecause an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign immunity." *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994).

The Federal Tort Claims Act (FTCA) grants a limited waiver of sovereign immunity. It waives the sovereign immunity of the United States against claims for property damage or personal injury "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances

---

[1] Although defendants raise strong arguments for judicial immunity, for qualified immunity, and for the lack of any *Bivens* cause of action in this factual context, these are merits-related arguments that should be adjudicated—if at all—in a court with personal jurisdiction over the individual defendants. It is not self-evident to me, as defendants suggest, that the issue of judicial immunity goes to the Court's subject matter jurisdiction. *See Mordkofsky v. Calabresi*, 159 F. App'x 938, 939 (11th Cir. 2005) (*per curiam*) (judicial immunity waiveable by failure to plead as defense and does not divest court of subject matter jurisdiction). I am also unprepared at the pleading stage to conclude that the Doe defendants have no standing, *i.e.*, that they have not sustained a cognizable injury-in-fact from the disclosure of Hopkins' residence location under the circumstances presented here of a former DEA agent who may legitimately fear retribution or retaliation by persons whom she has previously investigated or arrested.

where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

Thus, "the FTCA directs courts to consult state law to determine whether the government is liable for the torts of its employees." *Liranzo v. United States*, 690 F.3d 78, 86 (2d Cir. 2012). But the corollary is that "[t]he FTCA does not waive sovereign immunity for claims based solely on alleged violations of federal law." *Ibid.* As the Supreme Court has acknowledged, "[t]he United States simply has not rendered itself liable under [the FTCA] for constitutional tort claims." *Meyer*, 510 U.S. at 478. Accordingly, to the extent that plaintiffs allege that the DEA and U.S. Marshals Service violated their rights under the Constitution, all these federal law claims are barred by sovereign immunity for which the FTCA admits of no waiver or exception.

That leaves only the state law claims for invasion of privacy, libel, and slander. But these claims are also barred in view that plaintiffs do not dispute that they have not administratively exhausted any of their claims as required by the FTCA. *See* 28 U.S.C. § 2675(a); *Cooke v. United States*, ––– F.3d –––, 2019 WL 1065010, at *2 (2d Cir. 2019). Moreover, the FTCA does not waive sovereign immunity for claims of libel or slander. *See* 28 U.S.C. § 2680(h); *Guccione v. United States*, 847 F.2d 1031, 1033 (2d Cir. 1988).

In short, plaintiffs' claims against the DEA and U.S. Marshals Service are barred by sovereign immunity and not subject to any waiver or exception under the FTCA. Accordingly, I will dismiss plaintiffs' claims against the DEA and U.S. Marshals Service.

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss (Doc. #32) is GRANTED. The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 8th day of March 2019.

/s/*Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge